# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No.: 12-CV-00914-WYD-MJW

BALJIT S. NANDA, derivatively on behalf of
K&G PETROLEUM, LLC,

        Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

        Defendant.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

Plaintiff Baljit S. Nanda ("Nanda"), derivatively on behalf of K&G Petroleum, LLC ("Petroleum"), by and through the undersigned counsel, hereby submits this Response in Opposition to Defendant JPMorgan Chase Bank, N.A. ("Chase") Motion to Dismiss Plaintiff's Complaint (the "Motion"). In support thereof Plaintiff states as follows:

### I. INTRODUCTION.

Chase's Motion to Dismiss Nanda's derivative claims should be denied because the arguments advanced therein lack legal support. Even if a binding contract existed between Petroleum and Chase, the economic loss rule does not apply to preclude Nanda's negligence claim because in Colorado, a bank has an independent duty of ordinary care when dealing with a purported agent of a separate and distinct legal entity to inquire into the authority of the

purported agent prior to opening a business account, taking company's funds for deposit, and withdrawing company's funds.

Furthermore, Nanda's negligence and improper payment claims are not barred because: (1) taking the allegations in the Complaint as true, Puri did not have authority to open bank account with JPMorgan Chase Bank on Petroleum's behalf (the "Account"), deposit company's money therein, and then withdraw company funds in his name or transfer and deposit funds into Puri's personal accounts, including personal accounts at Chase; (2) Chase was on inquiry notice as to Puri's lack of authority and owed a duty to Petroleum, its customer, to confirm Puri's authority; and (3) pursuant to C.R.S. § 7-80-208, Chase is conclusively presumed to have known the contents of Petroleum's Articles of Organization, which show that Puri misrepresented information to Chase. In addition, Nanda sufficiently alleged that Chase's failure to comply with its duty of care to Petroleum caused it damages, and that every single payment, withdrawal and transfer out of the Account was improper because it was not authorized by Petroleum. Therefore, as more fully described below, Chase's Motion to Dismiss should be denied in its entirety.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true "all well-pleaded factual allegations in the [] complaint ... in the light most favorable to the non-moving party." *County of Santa Fe v. Public Svc. Co.,* 311 F.3d 1031, 1035 (10th Cir. 2002).[1] Pursuant to the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly,* Plaintiff must allege facts sufficient to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." 550 US. 544, 555 (2007). In terms of the sufficiency of the allegations contained in the

---

[1] *See also*, *Public Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 386 (Colo. 2001).

2

Complaint, Fed. R. Civ. P. 8 requires only notice pleading. Specifically, a party need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d)(1) further provides only that "[e]ach allegation must be simple, concise, and direct." As the Supreme Court explained in *Twombly*, to withstand Fed. R. Civ. P. 12(b)(6) motion the factual allegations need only be "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," *id.* (internal citations omitted), drawing reasonable inferences in favor of the plaintiff. *See Tiscareno* v. *Anderson,* 2011 U.S. App. LEXIS 4977 (l0th Cir. Utah Mar. 14, 2011). "Rule 12(b)( 6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations," *Neitzke* v. *Williams,* 490 U.S. 319, 327 (1989), even if it appears "that a recovery is very remote and unlikely." *Scheuer* v. *Rhodes,* 416 U.S. 232, 236 (l974).[2]

### III. ARGUMENT.

**A.  EVEN IF THERE WAS A BINDING CONTRACT, THE ECONOMIC LOSS RULE WOULD NOT PRECLUDE PLAINTIFF'S NEGLIGENCE CLAIM BECAUSE CHASE OWED PLAINTIFF AN INDEPENDENT DUTY OF CARE UNDER TORT LAW.**

Chase argues that Plaintiff's negligence claim must be dismissed based on the economic loss rule. Chase alleges that, because Nanda "concedes" that an "enforceable contract exists between JPMC and the LLC," "approved by a manager of the LLC," "Nanda cannot state a derivative claim seeking damages on behalf of the LLC for negligence in light of the economic

---

[2] Furthermore, even if the Complaint fails to state a claim upon which relief may be granted, permission to amend the Complaint should be given where, as here, there is a possibility of an adequate statement of claim. *Montana v. Hargett*, 84 Fed. Appx. 15, 17-18 (10th Cir. 2003).

3

loss rule."[3] Chase also claims that Nanda failed to allege an independent duty imposed on Chase that was breached.

In Colorado, the economic loss rule precludes a party suffering only economic loss as a result of breach of an express or implied contractual duty from asserting a tort claim for such a breach, absent an independent duty of care under tort law. *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 865 (Colo. 2005). To determine whether the economic loss rule applies, the focus is not on the nature of the loss, but rather on the source of the duty alleged to have been violated. *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1262-1263 (Colo. 2000). Tort duties are imposed by law without regard to any agreement, *City of Westminster v. Fischbach Masonry, Inc.*, 100 P. 3d 472, 483 (Colo. Ct. App. 2003), while contractual obligations arise from promises made between parties and are enforced to protect the expectancy interests protected by those promises. *Id.* Thus, the courts in Colorado look to the terms of the contracting documents to see if the duty allegedly breached is fully defined therein. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 73-74 (Colo. 2004)). Most significantly here, if the contract does not address a specific duty, the economic loss rule does not apply. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 73-74 (Colo. 2004).[4]

Plaintiff alleges in this case that Chase breached a duty to inquire and verify that the purported agent (i.e., Puri) had authority to, *inter alia*, open and maintain a company account.

---

[3] Defendant's allegations are misleading --- nowhere in the Complaint does Plaintiff concede existence of a contract between Chase and Petroleum.
[4] *See also City of Westminster v. Fischbach Masonry, Inc.*, 100 P. 3d 472, 483-84 (Colo. App. 2003); *Rosetti Assocs., Inc. v. Santa Fe 125 Denver, LLC.*, Civil Action No. 09-CV-00338-WJM-BNB, 2011 U.S. Dist. LEXIS 22082, at *18-19 (D. Colo. March 4, 2011) (applying Colorado law); *Keller v. A.O. Smith Harvestore Prod., Inc.*, 819 P.2d 69, 71-73 (Colo. 1991); *Lembke Plumbing & Heating v. Hayutin*, 148 Colo. 334, 366 P.2d 673, 675 (Colo. 1961).

4

*See* Complaint, ¶¶ 37, 43, 44.[5] This duty is not a product of any contract. Plaintiff certainly does not allege in the Complaint that the duty to inquire arises out of contract. *See generally* Complaint. Nor did Chase attach a contract or other document to the Motion establishing that the duty upon which Plaintiff's claim arises therefrom. Moreover, contrary to Chase's position, Colorado courts and the courts across the country recognize that, ***independent of contract***, a bank owes a duty of ordinary care to its customers to act in a ***commercially reasonable manner***. *See Cent., Inc. v. Cache Nat'l Bank*, 748 P.2d 351 (Colo. App. 1987) (recognizing tort duty to inquire as to the agent's authority independent of contract).[6] As the Colorado Court of Appeals explained in *Cache National Bank*:

> As is the general rule in all negligence cases, the issue [of] whether a bank has acted in a commercially reasonable manner is generally a question of fact, to be decided within the context of the specific record and in the light of normal business transactions. There are instances, however, where the circumstances demonstrate, as a matter of law, that the bank did not comply with reasonable commercial standards.

748 P.2d at 353 (internal citations omitted).

The allegations of the Complaint, taken as true, indeed demonstrate, as a matter of law, that Chase did not comply with reasonable commercial standards.[7] Reasonable commercial

---

[5] The duty allegedly breached by Chase is not the same as the duty asserted by the claimants in the cases relied on by Chase on pages 8-9 of its Motion, *i.e.*, a "duty to diligently carry out the contract," or "duty to pay as promised," or fiduciary duty "with respect to investment account."

[6] *See also Wells Fargo Realty Advisors Funding v. Uioli, Inc.,* 872 P.2d 1359, 1365 (Colo. Ct. App. 1994) (recognizing fiduciary duty claim by contractually bound bank customer); *Ciccone v. Pitassi*, C.A. No. PB 97-4180, 2004 R.I. Super. LEXIS 150, at *21-23 (R.I. Super. August 13, 2004) (held that in light of bank's duty to its customers to exercise ordinary care, economic loss doctrine did not apply to preclude plaintiff's negligence claim against the defendant-bank); *Cunningham v. World Sav. Bank, FSB*, 660 F. Supp. 2d 1078, 1088-1089 (D. Ariz. 2009); *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 617-619 (7th Cir. 2001) (a customer is free to seek relief in tort for loss sustained as a result of a breach of a duty of care that the law imposes on the defendant irrespective of the terms of the contract, such as bank's duty to observe ordinary care in handling its customer's transactions).

[7] At a minimum, commercial reasonableness is a question of fact to be determined through discovery and, perhaps, expert testimony. *Cache Nat'l Bank*, 748 P.2d at 353.

standards require a bank, when dealing with a purported agent of a separate and distinct legal entity, such as a limited liability company, to inquire into the authority of the purported agent to, *inter alia*, open an account in the company's name and withdraw funds therefrom in the agent's own name. *Weil v. First Nat'l Bank*, 983 P.2d 812, 814 (Colo. App. 1999) (recognized that a bank owes its customer a duty to inquire into the authority of an agent of a separate and distinct legal entity to set up the account, deposit the forged checks, and for the withdrawal of money); *Cache Nat'l Bank*, 748 P.2d at 354 (a bank owes its customer a duty to inquire into the agent's authority to indorse corporate instruments and deposit corporate funds).[8]

In *Cammarota v. Cammarota*, CV065002935S, 2007 Conn. Super. LEXIS 2350 (Connecticut, August 28, 2007), for example, a shareholder opened an account in the corporation's name, deposited corporate funds into it, and withdrew them, without the corporation's authorization or a corporate resolution. The corporation alleged that bank was negligent because it failed to act consistent with a duty owed to its customers to verify that a corporation's account was properly authorized, and review and verify that all of its policies and procedures were followed. *Id.* at 2-3. *Id.* at 3. The bank moved to dismiss the negligence claim arguing that it did not owe a duty to the corporation. *Id.* at 3. The appellate court held that a bank owes a duty of ordinary care to its customer, defined by the UCC, as "a person having an account with a bank or for whom a bank has agreed to collect items." *Id.* The court held that the plaintiff was a "customer," even though it alleged that it did not authorize the agent's actions in opening

---

[8] *See also Cammarota v. Cammarota*, CV065002935S, 2007 Conn. Super. LEXIS 2350 (Conn. Super. September 6, 2007) (duty to inquire into the agent's authority to open a corporate bank account); *533 Harbor Court, LLC v. Colonial Bancgroup, Inc.*, Case No. 08-80824-CIV-MARRA/JOHNSON, 2009 U.S. Dist. LEXIS 17140, at *6-7 (S.D. Fla. February 23, 2009) (accord); *Ciccone v. Pitassi*, C.A. No. PB 97-4180, 2004 R.I. Super. LEXIS 150, at *21-22 (R.I. Super. August 13, 2004) (bank owes its customer a duty of care in handling its customer's transactions); *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 613-619 (7th Cir. 2001) (bank owes its customer duty to inquire into the agent's authority when depositing or cashing corporate checks).

the account. *Id.* at 5-8[9]. The court held that the corporation became the bank's customer when the bank created the account in the name of the company and accepted for deposit checks made payable to the company. *Id.* at *7-8. The court concluded that by alleging that the bank permitted the creation of an account in the name of the corporation and that the bank accepted for deposit checks made payable to the corporation, the corporation had sufficiently alleged that the bank took on the corporation as its customer and assumed a duty of care for the purposes of the negligence claim. *Id.* at 7.

In *533 Harbor Court, LLC v. Colonial Bancgroup, Inc.*, Case No. 08-80824-CIV-Marra/Johnson, 2009 U.S. Dist. Lexis 17140 (S.D. Fla. February 23, 2009), the articles of organization and the operating agreement provided that General Diamond was the sole manager, and Herbert Corkin was the sole member, of the LLC. *Id.* at 2. The operating agreement also provided that the manager could only open a bank account on behalf of the company with the consent of Mr. Corkin. *Id.* However, members of General Diamond sought to open up a checking account on behalf of the LLC, unbeknownst to Mr. Corkin and without authorization. *Id.* at 3. Defendant-bank issued a checking account to the LLC. *Id.* General Diamond deposited over a million dollars into the account and then withdrew almost all of that money from the account, despite the fact that it was not authorized to do so. *Id.* In addition, because the account statements were sent to an address which was not a company's address Mr. Corkin had no opportunity to review any bank statements and learn of General Diamond's actions. *Id.*

---

[9] It is worthy of a note that UCC does not preclude a common-law negligence claim based on the bank's breach of a duty of care to its customers. *Cammarota v. Cammarota*, CV065002935S, 2007 Conn. Super. LEXIS 2350, at *10 (Connecticut, August 28, 2007).

The LLC filed a lawsuit against the bank, arguing that the bank breached a common law duty of inquiry to investigate and verify whether General Diamond had authority to open the account on behalf of the company, the identity of the company and its principals, and a copy of the company's articles and operating agreement. *Id.* at 3-4. The LLC alleged that the bank's failure to conduct this inquiry resulted in damages. *Id.* at 4. The bank moved to dismiss the complaint, claiming, *inter alia*, that it owed no duty to the LLC because it was not its customer. *Id.* at 4. The court, however, recognized that the bank owed its customer a duty of inquiry and held that plaintiff's allegation that a checking account was opened on behalf of the LLC, standing alone, demonstrated that plaintiff was bank's customer. *Id.* at 6-7. The bank's motion to dismiss was denied. *Id.* at 7-9.

In the present case, Nanda plainly alleged that Petroleum was a customer of the bank, that Chase allowed Puri to open a corporate bank account, took Petroleum's funds for deposit, and allowed Puri to withdraw the funds for personal use and move the funds into Puri's personal accounts. *See* Complaint at ¶¶ 16-28 & 37. Nanda alleged that Chase thereby violated its duty to Petroleum to inquire and verify whether Puri was authorized to conduct these transactions on behalf of Petroleum. *Id.* Furthermore, Nanda alleged that Petroleum has been damaged as a result of bank's negligence, when Puri stole and used company funds for personal purposes. *Id.* at ¶ 45. As in *Cammarota* and *533 Harbor Court, LLC*, these allegations, if proven, would establish that Chase breached a duty owed to the Plaintiff, independent of contract, to act in a commercially reasonable manner. Therefore, the economic loss rule is inapplicable.

**B.** **BECAUSE CHASE WAS ON INQUIRY NOTICE THAT PURI HAD NO AUTHORITY TO BIND PETROLEUM BY OPENING THE ACCOUNT AND WITHDRAWING COMPANY MONEY IN HIS NAME, PURI'S CONDUCT WAS NOT BINDING ON PETROLEUM.**

Chase argues that, pursuant to C.R.S. § 7-80-405(1)(b), Puri bound Petroleum to a contract, when he opened the Account, and that Plaintiff's claims are barred because "each of the payments … were made consistent with and pursuant to the instructions given by a statutorily authorized manager of the LLC on whom JPMC was entitled to rely." Motion at p. 11. Essentially, Chase argues that its reliance was justified because Puri represented to Chase that he was a "sole owner" of Petroleum and because Nanda "conceded" in the Complaint that Puri was a "manager" of the LLC. *Id.* at p. 5. This argument, like the last, is directly at odds with the prevailing law.

According to Chase, all elements of § 7-80-405(1)(b) are met merely because Nanda (1) admits that Puri was a <u>manager</u> and (2) concedes that Chase <u>didn't know</u> that Puri had no authority to open an account in Petroleum's name, deposit money therein, or take money out of the Account. *See* Motion at p. 5. Chase, however, cites no Colorado or other state's case law applying this statute and interpreting the meaning thereof, including the meaning of "notice" and "ordinary course of business," as a matter of law. In addition, Chase does not cite to a single case addressing a manger's authority to open a business bank account and then deposit and withdraw company funds from it. *See* Motion at pp. 12-13.

Section 7-80-405(1)(b) provides:

Each manager is an agent of the limited liability company *for the purpose of its business* and an act of a manager, including the execution of an instrument in the name of the limited liability company, *for apparently carrying on in the ordinary course of the business* of the limited liability company or *business of the kind carried on by the limited liability company* binds the limited liability company, *unless* the manager *had no authority* to act for the limited liability company in the particular matter *and* the person with whom the manager was dealing had *notice*.

(emphasis provided). Interpretation of C.R.S. 7-80-405(1)(b) must be guided by the Colorado common law of agency, because the language of the statute is consistent with the general principles of apparent authority in agency law. *Water, Waste & Land v. Lanham*, 955 P.2d 997, 1000-1001 (Colo. 1998) (statutes governing managers and members of a limited liability company do not displace common law agency principles).[10] Pursuant to the plain language of the statute, an LLC is bound by the actions of its managers only if (1) the agent's conduct was within the "ordinary course" of the LLC's business and (2) the person with whom the manager was dealing had no "notice" that the manager did not have "authority"[11] to perform a particular act on behalf of the LLC. *See* C.R.S. § 7-8-405(1)(b); *U.S. v. Acorn Tech. Fund, L.P.*, 295 F.Supp.2d 494, 507 (E.D. Pa. 2003) (courts interpreting similar provision in the limited partnership act held that acts of a partner bind the partnership only when those acts are for the purpose of carrying on the ordinary business of the partnership).

1. **As Alleged in the Complaint, Puri had No Authority to Bind Petroleum by Opening the Account and Withdrawing Company Money therefrom**.

A principal is bound by the actions of its agent only if the agent acted within the scope of his actual or apparent authority. *Witcher v. Gibson*, 168, 61 P. 192, 194 (Colo. App. 1900). Actual authority is considered that authority which is in fact given to an agent, while apparent authority is that authority which the agent reasonably appears to third parties to have. *Life*

---

[10] *See also Farm & Ranch Servs, Ltd. v. LT Farm & Ranch, LLC*, 779 F.Supp.2d 949, 962 (S.D. Iowa 2011) (interpreting similar statute in the context of the common law agency principles); *Synectic Ventures I, LLC v. EVI Corp.*, 241 Ore. App. 550, 557-58 (2011) (accord).

[11] Generally, authority to act is a question of fact, although the Court may decide the question as a matter of law when the facts are undisputed. *Villapando v. Denver Health*, 181 P.3d 357, 363 (Colo. Ct. App. 2007); *String Cheese Incident Ticketing, LLC v. Stylus Shows, Inc.*, Civil Action No. 05-cv-01934-LBT-PAC, 2006 U.S. Dist. LEXIS 20928, at *15-16 (D. Colo. April 14, 2006); *Dowling v. Exchange Bank of Boston*, 145 U.S. 512, 517, 12 S. Ct. 928, 930 (S. Ct. 1892) ("what the nature of the business in each case is, what is necessary and proper to its successful prosecution, what is involved in the usual and ordinary course of its management by those engaged in it, at the place and time where it is carried on, are all questions of fact to be determined by the jury.")

*Investors Ins. Co. of Am. v. Smith*, 833 P.2d 864, 868 (Colo. App. 1992); *Villalpando v. Denver Health and Hosp. Auth.*, 181 P.3d 357, 362 (Colo. App. 2007). Apparent authority holds a principal accountable for the results of the third-party's beliefs about a person's authority to take particular actions on behalf of the principal, when the belief is traceable to a <u>manifestation</u> by the principal, either by words or some other conduct, when the third-party's <u>reliance</u> on the manifestation is <u>reasonable</u> and <u>detrimental</u>. *String Cheese Incident Ticketing, LLC v. Stylus Shows, Inc.*, Civil Action No. 05-cv-01934-LBT-PAC, 2006 U.S. Dist. LEXIS 20928, at *14-15 (D. Colo. April 14, 2006); *Villalpando v. Denver Health & Hosp. Auth.*, 181 P.3d 357, 362 (Colo. Ct. App. 2007); *People v. Manning*, 672 P.2d 499, 507 n.8 (Colo. 1983) (adopting § 8 of the Restatement (Second) of Agency). Acts and manifestations of the principal, *not of the agent*, give apparent authority. *Butler v. Marsh, et. al.*, 66 Colo. 45, 47, 178 P. 569, 570 (1919).

Here, Nanda alleged that Puri did not have authority, either actual or apparent, to open the Account with Chase in Petroleum's name, deposit Petroleum's funds therein and use the funds in the Account for his own personal benefit. *See* Complaint, ¶¶ 24-28, 38, 42, 48. There are no provisions in the Operating Agreement, effective at the time the complained of transactions took place, allowing Puri to unilaterally open a bank account in Petroleum's name, deposit Petroleum's money therein, and use Petroleum's money for his own personal purposes. *See* Operating Agreement, attached as **Exhibit A**.[12]   The Complaint contains no allegations to the effect that Petroleum made an affirmative representation or manifestation to justify Chase's belief that Puri could, *inter alia*, open an account in its name. *See generally* Complaint. The only

---

[12] Although Chase complains that Nanda did not attach an Operating Agreement to the Complaint, Nanda was not required to attach a single document because of the "notice" pleading standard required by Colo. R. Civ. P. 8, applicable at the time the Complaint was filed, and Fed. R. Civ. P. 8.

manifestation Chase admittedly relied on was Puri's false statements, which falsity could have and should have been discovered through a simple search of the Colorado Secretary of State website. Chase, falsely assuming Puri was the company's sole owner and member, erroneously concluded that he was acting within the scope of his authority, which enabled Puri to embezzle millions of Petroleum dollars. Chase did so at its own peril. Indeed, it has been the law in this state for at least ninety years that "one who deals with an assumed agent is, by the knowledge of the agency, put upon *inquiry* as to the agent's authority and he accepts the agent's statements of such authority at his peril." *Canon City Indus. Stores Co. v. McInerney*, 71 Colo. 492, 494, 208 P. 457, 458 (Colo. 1922) (emphasis added).

Furthermore, Chase cannot successfully argue that Puri's authority to open the Account was implied or apparent from his status as a manager of the LLC so as to justify Chase's deliberate ignorance, because managerial status does not in itself give the agent the unchecked authority to bind the LLC to a contract. *Rizzuto v. R.W. English Lumber Co.*, 44 Colo. 413, 98 P. 728 (1908); *Trust Co. of Georgia v. Nationwide Moving & Storage Co., Inc.*, 235 Ga. 229, 231 (1975)[13]; *Zions First Nat'l Bank v. Clerk Clinic Corp*, 762 P.2d 1090, 1095 (Utah 1988); *U.S. v. Acorn Technology Fund, L.P.*, 295 F.Supp.2d 494, 506-507 (E. D. Pa. 2003). Therefore, Chase's

---

[13] In *Trust Co. of Georgia,* as in the present case, a general manager of the corporation (which authority is akin to that of an LLC manager, *see Crouse v. Mines*, 189 N.C. App. 232, 238 (2008)) opened a bank account in the name of the corporation and signed his individual name as the sole authorized signature for withdrawals. *Id.* at 229. The bank did not require from the agent any evidence of his authority to open the account or withdraw corporate money therefrom in his name. *Id.* at 229. The bank argued that it was insulated from liability because a manager had authority to bind corporation by setting up a bank account. *Id.* at 230. The court first noted that the agent did not have actual authority to open a bank account. *Id.* at 232. The court further found that there were no manifestation of authority to the bank by the principal, and thus, no apparent authority. *Id.* at 232 ("the bank, of course, may not rely on the general manager's own declarations of the extent of his authority"). The court then held that although the "title of general manager presumptively implied the power to make any contract ordinarily necessary for the usual and ordinary conduct of the business of which such person is a general manager," "opening a corporate account and withdrawing corporate funds is not inherent in the power of the general manager." *Id.* at 232.

argument that Puri's authority to open the Account was, as a matter of law, in the ordinary course of Petroleum's business or implied or apparent from his status as a manager of Petroleum as to justify Chase's deliberate ignorance, is fatally flawed.

### 2. Chase was on "Notice" that Puri did not Have Authority to bind Petroleum.

As a matter of law, absent a previous course of dealings or some other manifestation from Petroleum, it was not reasonable for Chase to rely on Puri's self-serving statements that Puri had the requisite authority to open a Petroleum bank account, deposit Petroleum funds therein, and withdraw those funds for his personal use. *Canon City Indus. Stores Co.*, 208 P. at 458; *Witcher v. Gibson*, 61 P. 192, 194 (Colo. App. 1900). The law is clear in Colorado that "notice" of existence of the agent's authority means inquiry notice. A third party dealing with the purported agent and relying on the agent's apparent authority must not act negligently and must use reasonable means to "inquire about the agent's authority, and if he thereby learns or by such investigation might have found out the actual limits of the agent's power, he may not insist that the authority was apparently possessed, and on that theory hold the principal for what the agent has done, when in fact he had no real right to act." *Witcher v. Gibson*, 61 P. 192, 194 (Colo. App. 1900); *see also* Restatement (Second) of Agency, § 9. In addition, as more fully discussed in section A *infra*, as a matter of law, a bank has a duty when dealing with a purported agent of a separate and distinct legal entity to inquire into the authority of the purported agent to open an account, take company funds for deposit, and withdraw company funds therefrom. *See* Section A *infra*. Reasonable commercial standards require a bank to obtain documents proving authority of a purported agent, prior to opening a business checking / savings account, taking company funds for deposit, or allowing the agent to withdraw company funds. *See id.*

Therefore, Chase was required, as a matter of law, to inquire further into Puri's authority. Indeed, if Chase had bothered to verify any of the information provided by Puri (*see* Complaint, ¶¶ 16-18), which it could have done through a quick and free business records search at the Colorado Secretary of State website, it would have learned that Puri provided Chase with false information. A mere phone call would further confirm that Puri had no authority to open the Account. However, as the Complaint sufficiently alleges and Chase concedes, it did <u>nothing</u> to confirm that Puri had any authority to act in the manner described in the Complaint. Chase did not ask Puri for an operating agreement, a corporate resolution, or any type of a document evidencing Puri's authority to open the Account. The Complaint alleges that Chase deliberately turned away from the obvious and relied solely on Puri's representation of authority, even when Puri took money from the Account for his *personal use*, moved the money into his *personal accounts*, or drew checks *in his own name*, in breach of its obligations to Petroleum. *See* Section A *infra*; *Cache Nat'l Bank*, 748 P.2d at 351 (Colo. App. 1987) ("As a matter of law, reasonable commercial standards require a bank, when dealing with checks purportedly indorsed by an agent, to inquire as to the authority of that agent, particularly if the funds are to be credited to the agent's personal account.").

Chase's inquiry notice of Puri's lack of authority is further solidified by the Colorado Limited liability Company Act. Pursuant to C.R.S. § 7-80-208, Chase was on "notice" of all facts required by Statute to be set forth in Petroleum's articles of organization on file in the records of the Colorado Secretary of State at the time the Account was set up, which includes an identification of the incorporator, the registered agent and the company's principal place of business. *See* C.R.S. §7-80-204 (2010); *Water, Waste Land, Inc. v. Lanham*, 955 P.2d 997,

14

1003, 1004 (Colo. 1998) (when a third party deals with an agent acting on behalf of an LLC, the existence and identity of which has been disclosed, the third party is conclusively presumed to know the contents of the LLC's articles of organization). Petroleum's Articles of Organization did not refer to Puri as an incorporator or registered agent, and contained the Company's true address, as opposed to Puri's home address given to Chase, so that Petroleum would not receive the bank account statements. *See* Petroleum's Articles of Organization, attached hereto as **Exhibit B**. Therefore, as a matter of law, Chase was on notice that Puri was *not the sole* owner or manager of Petroleum and that Puri provided a false Company address. As such, Plaintiff has stated a claim upon which relief can be granted and denial of the Motion to Dismiss is warranted. *Id.*

## IV. CONCLUSION.

WHEREFORE, for the reasons stated herein, the Plaintiff prays that the Court deny Defendant's Motion to Dismiss, Order the Defendant to file an Answer within ten (10) days of the Court's Order, and for such other and further relief as the Court deems appropriate.

**DATED THIS** 4th day of May, 2012.

               ALLEN & VELLONE, P.C.

               By: *s/ Patrick D. Vellone*
               Patrick D. Vellone, No. 15284
               Matthew M. Wolf, No. 33198
               Tatiana G. Popacondria, No. 42261

               ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

The undersigned certifies that, on this 4th day of May 2012, I caused the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Troy A. Eid
Cuneyt A. Akay
The Tabor Center
1200 Seventeenth Street, Suite 2400
Denver, CO 80202
eidt@gtlaw.com
akayc@gtlaw.com

               *s/ Terri M. Novoa*
                Terri M. Novoa