# OPERATING AGREEMENT
# OF
# K&G PETROLEUM LLC

This Operating Agreement (the "Agreement") of K&G Petroleum LLC (the "Company"), a limited liability company organized under the Colorado Limited Liability Company Act (the "Act"), is made and entered into as of the date of filing of the Articles of Organization of the Company with the Colorado Secretary of State by and among the Members (the "Members") of the Company signing this Agreement on the signature page, or otherwise agreeing in writing to be bound hereby, all of whom agree as follows:

## ARTICLE I
## NAME AND PRINCIPAL OFFICE

The initial principal business office of the Company will be at 9777 S. Yosemite Street, Suite 120, Lone Tree, Colorado 80124. The members may, from time to time, establish a different principal business office or other business offices or locations.

## ARTICLE II
## PURPOSE OF THE COMPANY

The business of the Company may include any lawful business permitted to a limited liability company by the Act which the members approve. The initial business of the Company shall be the ownership, operation and management of gasoline service stations.

## ARTICLE III
## MANAGEMENT

Section 1. <u>Management Vested in Managers.</u> Unless otherwise provided by law or this Agreement, management of the Company/s business and affairs shall be vested in the Managers.

Section 2. <u>Indebtedness.</u> No debt shall be contracted or liability incurred by or on behalf of the Company except by the action of a majority of the Company's Managers.

Section 3. <u>Indemnification.</u> Each Manager, employee and agent of the Company, and each person who shall serve at its request as a manager, member, director, employee or agent of another limited liability company, corporation, partnership, joint venture, trust or other enterprise shall have all of the benefits and be subject to all of the requirements pertaining to indemnification by the Company to the fullest extent now provided by the Act, and as the same may be amended subsequent to the Effective Date of this Agreement, or if the provisions shall be repealed in their entirety, the benefits and requirements of such provisions as they existed immediately prior to their repeal shall be applicable under this section and shall be incorporated herein by this reference thereto. The Company may maintain liability insurance on behalf of its Members, employees or agents.

Section 4. <u>Compensation.</u> The Managers of the Company will be compensated in such

1

CONFIDENTIAL
EXHIBIT A

DEPOSITION EXHIBIT 69
1-26-12 pgc
AGREN BLANDO REPORTING

Puri 0906

amounts, if any, as shall be established from time to time by a majority vote of the Members at a meeting of Members.

Section 5. <u>Administration.</u> The Managers may employ or contract with another person to administer the business and financial affairs of the Company of such terms and conditions and at such compensation as the Manager shall determine.

Section 6. <u>Taxation.</u> The Managers shall use all reasonable efforts to avoid the Company being taxed as a corporation for federal and state income tax purposes unless the Members have unanimously voted for the Company to elect to be taxed as a corporation.

ARTICLE IV
COMPANY PROPERTY

Real and personal property owned or purchased by the Company shall be held and owned and conveyance made in the name of the Company. Instruments and documents providing for the acquisition, mortgage or disposition of property of the Company shall be valid and binding on the Company when executed by at least a one of the Managers of the Company.

ARTICLE V
MAINTENANCE OF BOOKS, RECORDS, REPORTS
AND ACCOUNTS; BANK ACCOUNTS

Section 1. <u>General Duties as to Records.</u> At all times there shall be maintained for the Company true and proper books, records, reports, and accounts in accordance with generally accepted accounting principles, consistently applied, in which shall be entered fully and accurately all transactions of the Company. The books, records, reports and accounts shall be maintained (or be caused to be maintained) by the Managers.

Section 2. <u>Specific Requirements as to Records.</u> The books and records of the Company, which shall be kept at the Company's principal business office, shall include:

(a) A current list of the full name and last-known mailing address of each Member both past and present;

(b) A copy of the Articles of Organization and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

(c) Copies of the Company's federal, state, and local income tax returns and reports, if any, for the three most recent years;

(d) Copies of this Agreement and all amendments hereto; copies of any writings permitted or required under section 7-80-502 of the Act relating to obligations of Members to make contributions to the Company, and copies of any financial statements of the Company

2

for the three most recent years;

(e) Minutes of every annual and special meeting and any meeting ordered by a court pursuant to section 7-80-707 (4) of the Act;

(f) Unless contained in this Agreement or in a writing permitted or required under section 7-80-502 of the Act relating to obligations of Members to make contributions to the Company, a statement prepared and certified as accurate by a Member of the Company which describes:

(1) The amount of cash and a description and statement of the agreed value of the other property or services contributed by each Member and which each Member has agreed to contribute in the future;

(2) The times at which or events on the happening of which any additional contributions agreed to be made by each Member are to be made;

(3) If agreed upon, the time at which or the events on the happening of which a Member may terminate his membership in the Company and the amount of, or the method of determining, the distribution to which the Member may be entitled respecting the Member's membership interest and the terms and conditions of the termination thereof and distributions with respect thereto;

(4) Any right of a Member to receive distributions which include a return of all or any part of a member's contribution;

(g) Any written consents obtained from Members pursuant to section 7-80-711 of the Act relating to action without a meeting; and

(h) All records listed in (a) through (g) are subject to inspection and copying at the reasonable request, and at the expense, of any Member during ordinary business hours.

Section 3. <u>Members Rights as to Records.</u> A Member of the Company shall have the right to:

(a) Inspect and copy Company records as provided in Section 2 of this Article;

(b) Obtain from the Members having charge thereof from time to time, during business hours after reasonable prior notice and demand and at the Member's cost, for any purpose reasonably related to the Member's interest as a Member:

(1) True and full information regarding the state of the business and financial condition of the Company and any other information regarding the affairs of the Company;

(2) Promptly after becoming available, a copy of the Company's federal,

3

state and local income tax returns for each year; and

  (3) Have a formal accounting of the Company affairs whenever circumstances render it just and reasonable.

Section 4. <u>Financial Statement and Fiscal Matters.</u>

 (a) The Company's financial books shall be closed annually, and financial statements shall be prepared by the Company. The financial statements shall include a balance statement, a statement of Company profits and losses, a statement of cash flow, a statement of each Member's Capital Account and such other supporting statements as the Members may deem appropriate. The financial statements shall be prepared in accordance with generally accepted accounting principles, consistently applied.

 (b) As soon as reasonably possible after the close of each fiscal year, the following shall be mailed or delivered to each person who was a Member at any time during the fiscal year:

  (1) a true and correct photocopy of the financial statements of the Company for the fiscal year;

  (2) all tax information relating to the Company which is necessary for the preparation of the person's federal, state and local income tax returns; and

  (3) any other information regarding the Company and its operations during the fiscal year which the person or persons having custody of the information in good faith determine to be material or significant to the Members.

 Section 5. <u>Company Funds.</u> The funds of the Company shall be used exclusively with respect to and for the benefit of the Company. The funds of the Company shall not be commingled with the funds of any other person, and shall not be employed, nor shall any other person be permitted to employ, any funds of the Company in any manner except with respect to and for the benefit of the Company.

 Section 6. <u>Fiscal Year.</u> The fiscal and tax accounting year of the Company shall be the 12-month period coinciding with the calendar year, except that the final fiscal year shall be that period beginning the first day of the year of the Company's termination and ending on the date of termination of the Company.

ARTICLE VI
CONTRIBUTIONS OF THE MEMBERS

 Section 1. <u>Initial Contributions to Capital.</u> The initial contributions to the capital of the Company by the Members initially signing this Agreement (the "Initial Members") shall be as set forth in an Exhibit A attached to this Agreement or as reflected in the books and records of the

4

Company. Any person subsequently becoming a voting Member of the Company, (a "Subsequent Member"), other than by way of a transfer of a Member's interest in the Company in a manner permitted by this Agreement, shall make an initial cash contribution to the capital of the Company in an amount as may be required by the Members.

Section 2. Additional Contributions. No Member shall be required to make any contribution to the capital of the Company in excess of the Member's required initial capital contribution. Any or all of the Members may, however, make or commit to make additional capital contributions to the Company in cash, property or the performance of services. If additional capital contributions are at any time made by less than all the Members, the capital accounts of the Members thereafter shall be unequal based on the different capital contributions made by the Members.

Section 3. Limitation on Compromising Obligations to Contribute Capital. The obligation of a Member to make a capital contribution, or return money or other property paid or distributed to the Member, whether or not in violation of this Agreement or the Act, may be compromised only by consent in writing of all the Members and then only to the extent permitted by law. Notwithstanding a compromise, a creditor of the Company who extends credit or otherwise acts in reliance on the commitment or obligation of a Member to make a capital contribution may enforce the commitment or obligation.

ARTICLE VII
PROFITS AND LOSSES

Section 1. Allocation of Profits and Losses.

(a) The profits and losses of the Company, including all items of revenue, income, gain, loss, deduction, credit, and other items of a financial or tax nature, shall be allocated to the respective capital accounts of the Members in the same proportions as their respective capital accounts bear to the aggregate capital accounts in the Company immediately prior to the allocation.

(b) Any Company revenues allocated to Members and interest earned on invested capital or earned on any monies credited to the capital accounts of the Members are to be allocated to their capital accounts.

(c) Any distributions made, or losses allocated, to or for the account of any Member will be deducted from the capital account of the Member.

Section 2. Certain Tax Matters.

(a) For income tax and accounting purposes, to the extent permitted by law, deductions available for federal income tax purposes will be allocated to the Members in the same manner as profits and losses are allocated.

(b) No election is to be made as to the Company by the Company, the Members,

5

the Tax Matters Manager, or any Member to be excluded from the application of the provisions of Subchapter K of the Internal Revenue Code of 1986, as amended (the "Code"), or from any similar provisions of state tax laws which relate to the taxation of the Company.

(c) Notwithstanding any other provision of this Agreement no sale or other transfer of assets of the Company shall be permitted which would cause a termination of the Company for tax purposes under Section 708(b)(1)(B) of the Code.

(d) If any Member is not a resident of the State of Colorado, the Member agrees to execute and deliver to the Company for filing with the Colorado Department of Revenue, pursuant to Section 39-22-601(4.5), Colorado Revised Statues, an agreement in a form prescribed by the Department, to file a Colorado income tax return pursuant to Section 39-22-601, to make timely payment of all taxes imposed on the Member by the State of Colorado with respect to the Company, and to be subject to personal jurisdiction in the State of Colorado for purposes of the collection of income taxes, together with related interest and penalties, imposed on the Member by the State of Colorado with respect to the income of the Company. Each non-resident Member further agrees to reimburse the Company for any monies paid by the Company to the State of Colorado, pursuant to requirements of the State's laws, with respect to tax liability of the Member from the income of the Company.

Section 3. Tax Matters Manager or Partner. So long as Preet S. Puri shall be a Member of the Company, he is designated as the Tax Matters Manager or Partner of the Company. If he or a successor Tax Matters Manager or Partner shall cease to be a Manager, the remaining Manager or Managers shall promptly designate a successor. The Tax Matters Manager or Partner shall have full authority to take or cause to be taken on behalf of the Company all required actions to comply with applicable tax laws and regulations, to make all elections which he determines to be desirable and permissible for the Company to take (including elections under Section 754 of the Code), to ensure that the Company complies with Section 704(c) of the Code when the fair market value and the adjusted basis of property contributed by a Member to the Company are not equal, and to cause the Company to comply with all tax reporting obligations including providing federal Schedule K-1's to the Members.

## ARTICLE VIII
## DISTRIBUTIONS

Section 1. Distributions. The Company shall distribute annually or at more frequent times as shall be determined by the Managers, so much of the Company's cash available for distribution as the Managers, in their sole discretion, shall deem advisable. All distributions shall be proportionate to the capital accounts of the Members at the time of the distribution. If there is more than one Member, no distribution shall be made to one Member without a distribution being made to the other Members unless all the Members agree that a distribution may be made to less than all Members.

Section 2. Operating Funds. Prior to any distribution being made, the Managers may retain funds in an amount determined by them as necessary for the effective and continued operations of the Company. This fund is to be maintained for such time as the Managers deem prudent; and it may be

subsequently increased or decreased at the discretion of the Managers.

Section 3. <u>Limitation on Distributions.</u> A Member may not receive a distribution from the Company to the extent that, after giving effect to the distribution, all liabilities of the Company, other than liabilities to Members on account of their membership interests, would exceed the fair value of the Company assets.

## ARTICLE IX
## RESIGNATION AND DEATH OF A MEMBER

Section 1. <u>Resignation.</u> A Member may resign from the Company at any time by giving written notice to the other Members, but if the resignation violates this Agreement the Company may recover from the resigning Member damages for breach of agreement and offset the damages against the amount otherwise distributable to the resigning Member.

Section 2. <u>Distribution on Resignation or Death.</u> Upon resignation or death of a Member, the Member or the Member's legal representative is entitled to demand and receive the Member's proportionate share of undistributed net earnings and the Member's capital account balance within six (6) months following the date of the Member's resignation or death.

## ARTICLE X
## TRANSACTIONS WITH MEMBERS OR MANAGERS

A Member may lend money to, act as surety for, and transact other business with the Company and, subject to other applicable law, has the same rights and obligations with respect thereto as a person who is not a Member.

## ARTICLE XI
## MEMBERS

Section 1. <u>Additional Members.</u> After the filing of the Company's original Articles of Organization, a person may be admitted as an additional Member of the Company upon the written consent of all Members.

Section 2. <u>Limitation on Transfers of Interest.</u> The interest of each Member in the Company constitutes the personal property of the Member and may be transferred or assigned by unanimous written consent of the other Members, or if there is only one Member, by that Member. However, if all of the other Members of the Company other than the Member proposing to dispose of the Member's interest do not approve of the proposed transfer or assignment by unanimous written consent, the transferee of the Member's interest shall have no right to participate in the management of the business and affairs of the Company or to become a Member. The transferee shall only be entitled to receive the share of profits or other compensation by way of income and the return of contributions to which that Member would otherwise be entitled.

Section 3. <u>Substituted Members.</u> A substituted Member is a person admitted to all the rights

7

of a Member who has died or has assigned his interest in the Company with the approval of all the Members of the Company by unanimous written consent. The substituted Member has all the rights and powers and is subject to all the restrictions and liabilities of his assignor; except that the substitution of the assignee does not release the assignor from liability to the Company.

Section 4. Rights of Creditor Against Member. On application to a court of competent jurisdiction by any judgment creditor of a Member, the court may charge the membership interest of the Member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee without consent of the other Members of the membership interest. This section shall not deprive any Member of the benefit of any exemption laws applicable to the Member's interest in the Company.

Section 5. Legal Representatives of Members. If a Member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his person or his property, the Member's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Member's rights for the purpose of settling his estate or administering his property.

Section 6. No Personal Liability of Members. Members of the Company shall not be liable under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the Company.

Section 7. Voting. Except as otherwise provided by the Act, the Articles of Organization or this Agreement, voting and agreement upon any matter will be determined by a majority of the capital accounts of the Members at the time of the vote. Any Member may vote in person or by proxy.

Section 8. Quorum. A majority of the Members entitled to vote shall constitute a quorum at the meeting of Members. If a quorum is not represented at any meeting of the Members, such meeting may be adjourned for a period not to exceed sixty days at any one adjournment.

Section 9. Notice of Meeting.

(a) Written notice stating the place, day, and hour of the meeting and, in case of a special meeting, the purpose for which the meeting is called shall be delivered not less than ten days nor more than fifty days before the date of the meeting, either personally or by mail, by or at the direction of any Member or person calling the meeting to each Member of record entitled to vote at such meeting.

(b) Notice to Members, if mailed, shall be deemed delivered as to any Member when deposited in the United States mail, addressed to the Member at the Member's address shown on the Company's records, with postage prepaid, but, if three successive letters mailed to the last-known address of any Member are returned as undeliverable, no further notices to the Member shall be necessary until another address for the Member is made known to the Company.

8

CONFIDENTIAL

(c) When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken except, if the adjournment is for more than thirty days, a notice of the adjourned meeting shall be given to each Member entitled to vote at the meeting. At the adjourned meeting the Company may transact any business which might have been transacted at the original meeting.

(d) When any notice is required to be given to any Member of the Company under the provisions of this Section, a waiver thereof in writing signed by the person entitled to the notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of the notice.

(e) By attending a meeting, a Member:

(i) Waives objection to lack of notice or defective notice of the meeting unless the Member, at the beginning of the meeting, objects to the holding of the meeting or the transacting of business at the meeting;

(ii) Waives objection to consideration at the meeting of a particular matter not within the purpose or purposes described in the meeting notice unless the Member objects to considering the matter when it is presented.

Section 13. Written Consent in Lieu of Meeting.

(a) Action required to be taken at a meeting of the Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by each Member entitled to vote. Such action is effective when all Members entitled to vote have signed the consent, unless the consent specifies a different effective date.

(b) Written consent of the Members entitled to vote has the same force and effect as a unanimous vote of the Members and may be stated as such in any document.

## ARTICLE XII
## DISSOLUTION OF THE COMPANY

Section 1. Events of Dissolution. The Company shall be dissolved upon the occurrence of any of the events causing dissolution ("Dissolution Events") which are stated in the Articles of Organization unless the business is continued in a manner authorized therein, or if no Dissolution Events are stated in the Articles of Organization, the Company shall be dissolved at the end of its stated term in the Articles of Organization, if any, or upon agreement of a majority of the capital accounts in the Company.

Section 2. Statement of Intent to Dissolve. As soon as possible following the occurrence of

CONFIDENTIAL

any Dissolution Event, the Company shall execute and file as provided in the Act a statement of intent to dissolve in such form as shall be prescribed by the Secretary of State of Colorado or which otherwise complies with the Act. The statement of intent to dissolve shall be executed by a person required by the Act.

Section 3. Effect of Filing Statement.

(a) Upon the filing with the Secretary of State of a statement of intent to dissolve, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business, but its separate existence shall continue until articles of dissolution have been filed with the Secretary of State or until a decree dissolving the Company has been entered by a court of competent jurisdiction.

(b) The filing of the statement of intent to dissolve shall not affect the limited liability of the Members.

Section 4. Distribution of Assets upon Dissolution. In settling accounts after dissolution, the assets of the Company shall be distributed as provided in the Act.

Section 5. Negative Capital Accounts. If any Member has a capital account, maintained in accordance with the provisions of Articles VII and VIII, which has a balance of less than zero, and if the assets available for distribution after dissolution of the Company are insufficient to allow a distribution to other Members of amounts equal to the then balance in their capital accounts, then the Member upon receipt of a demand therefor from the Company, shall promptly tender to the Company an amount of cash equal to the lesser of:

(a) the amount required to bring the balance of the Member's capital account to zero; or

(b) the amount needed so that distributions may be made to all the Members in an amount equal to the balance in their respective capital accounts. Such contributions shall be distributed along with other Company assets, as provided above.

ARTICLE XIII
MISCELLANEOUS

Section 1. Amendments.

(a) This Agreement may be amended as provided in this Section and when so amended the amendments shall be binding on every Member; provided, that without the unanimous consent of all Members there shall be no amendment which would:

(i) cause the Company to become taxable as an association for income tax purposes;

10

(ii) change the nature or amount of the interest of any Member in the Company;

(iii) require any additional contributions to the capital of the Company by a Member; or

(iv) subject any Member to personal liability for indebtedness or obligations of the Company.

(b) All permitted amendments shall be proposed in writing by Members owning not less than twenty-five percent (25%) of the percentage interest (computed on the basis of capital contributions to the Company) of all the Members in the Company. Any proposed amendment shall not become effective until it has been considered at a meeting of the Members duly held for that purpose and has received the affirmative vote of Members owning at least two-thirds (2/3) of the capital accounts of all the Members in the Company.

Section 2. Severance. If any provision of this Agreement or the application of a provision to any person or circumstance shall be held invalid, the remainder of this Agreement, or the application of the provision to persons or circumstances other than those to which it was held invalid, shall not be affected thereby; provided, however, that if any provision of this Agreement is so applied as to impair the limited liability of the Members, the Company shall dissolve and be wound up and terminated as provided in Article XII hereof.

Section 3. Waiver of Partition or Breach. Each of the parties hereto irrevocably waives during the term of the Company any right that the party may have to maintain any action for partition with respect to Company properties.

Section 4. Waiver. No assent or waiver, expressed or implied, to any breach of any one or more of the covenants or agreements hereof shall be deemed or taken to be a waiver of any succeeding or other breach.

Section 5. Successors and Assigns. This Agreement shall be binding on the parties hereto, their successors, heirs, devisees, assigns, legal and personal representatives, executors and administrators.

Section 6. Entire Agreement, Execution and Counterparts. The Articles of Organization and this Agreement contain the entire understanding among the parties, and there are no agreements, understandings, restrictions, representations or warranties among the parties other than those set forth herein. This Agreement and any amendment thereto may be executed in any number of counterparts with the same effect as if all parties hereto had all signed the same document. All counterparts shall be construed together and shall constitute one Agreement.

Section 7. Governing Law. This Agreement, and the application or interpretation thereof, shall be governed exclusively by its terms and by the laws of the State of Colorado.

11

CONFIDENTIAL

Puri 0916

Section 8. <u>Captions.</u> Captions or headings of the articles and paragraphs of this Agreement are solely for convenience and are not a part of this Agreement and shall not be used for the interpretation or determination of the validity of this Agreement or any provision hereof.

Section 9. <u>Gender.</u> When necessary for proper construction, the masculine of any word used in this Agreement shall include the feminine and neuter gender, the singular the plural, and vice versa.

Section 10. <u>Secretary of State Filings.</u> Whenever a document or writing is to be delivered to the Colorado Secretary of State for filing, any Member is authorized to cause the document or writing to be delivered to the Colorado Secretary of State for filing, except if there are Managers then only a Manager acting at the time the document or writing is to be delivered may deliver the document.

IN WITNESS WHEREOF, the undersigned have executed this Agreement effective December 2, 2002.

_____  _____
(Signature)                                               (Signature)

_____Baljit S. Nanda_____   _____Preet S. Puri_____
(Print Name)                                            (Print Name)

Witness:
_____
Print Name: _Randy E. Dunn_

12

**CONFIDENTIAL**       **Puri 0917**

**Exhibit A**

**Initial Capital Contributions**

The initial capital contributions of the Members of K&G Petroleum LLC are as follows:

| Member | Capital Contribution |
|---|---|
| Baljit S. Nanda | $_____ |
| Preet S. Puri | $_____ |

The initial percentage of Capital Accounts for allocation of profits and losses is:

| Member | Initial Percentage of Capital Accounts |
|---|---|
| Baljit S. Nanda | 51.0 % |
| Preet S. Puri | 49.0 % |

13

CONFIDENTIAL			Puri 0918